# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF:**<br><br>**A BLACK AT&T MODEL 40440 FLIP PHONE, IMEI: 014685005966025, FCCID: 2ACCJN012, SKU: S027B;**<br><br>**A BLACK AT&T MODEL 40440 FLIP PHONE, IMEI: 014685008240063, FCCID: 2ACCJN012, SKU: S027B;**<br><br>**A LG BLACK BOOST MOBILE SMARTPHONE, WITH SIM CARD 8901120300 0052666514;**<br><br>**A BLACK AND SILVER APPLE IPHONE, MODEL A1586, IMEI: 356680081573833, FCC ID: BCG-E2816A WITH SIM CARD 8901120100 0558354989;**<br><br>**COLLECTIVELY, "SUBJECT DEVICES"** | 19-3166 JMC<br><br>Case No. _____<br><br>**Filed Under Seal**<br><br>____ FILED ____ ENTERED<br>____ LOGGED ____ RECEIVED<br><br>OCT 29 2019<br><br>AT BALTIMORE<br>CLERK, U.S. DISTRICT COURT<br>BY DISTRICT OF MARYLAND<br>          DEPUTY |

## AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS

I, Special Agent Douglas Sarsfield, being first duly sworn, hereby depose and state as follows:

1. I submit this affidavit in support of an application for search and seizure warrants authorizing the search of the following cellphones, collectively the "**SUBJECT DEVICES**", which are now stored at the ATF Baltimore Field Office, located at 6797 Dorsey Road, Elkridge, Maryland:

   a. A black AT&T model 40440 flip phone, IMEI: 014685005966025, FCCID: 2accjn012, sku: s027b;

   b. A black AT&T model 40440 flip phone, IMEI: 014685008240063, FCCID: 2accjn012, SKU: s027b;

1

  c. An LG black Boost Mobile smartphone, with sim card 8901120300 0052666514;

  d. A black and silver Apple iPhone, model a1586, IMEI: 356680081573833, FCCID: bcg-e2816a with sim card 8901120100 0558354989.

2. The **SUBJECT DEVICES** were recovered from the bedroom of Vaness KELLY during the September 18, 2019 execution of a search warrant at 3200 Auchentoroly Terrace, 1R, Baltimore, MD 21217.

3. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 846 (Conspiracy to Distribute a Controlled Dangerous Substance), and 21 U.S.C § 841(a) (Possession with Intent to Distribute a Controlled Dangerous Substance) have been committed by Vaness KELLY. Based on the facts that KELLY was located inside the residence during the search warrant of his home, CDS was located inside his home and inside his vehicle parked outside, a firearm was located inside of his bedroom, and the fact that he told investigators that he slept in the bedroom where the **SUBJECT DEVICES** were located, there is probable cause to believe that evidence of these crimes is located within the **SUBJECT DEVICES.**

4. The applied-for search and seizure warrants would authorize the forensic examination of the **SUBJECT DEVICES**, which are also identified in Attachment A, for the purpose of identifying electronically stored data, more particularly described in Attachments B, which constitutes evidence, fruits, and/or instrumentalities related to the above-mentioned violations of federal law.

## AFFIANT BACKGROUND

5. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so since 2014. I am currently assigned to the Baltimore Field Division, Baltimore Group II, which investigates violations of federal firearms laws, violent

crimes, and narcotics trafficking.

**19-3166 JMC**

6. I have participated in investigations focusing on controlled dangerous substance (CDS) trafficking, gangs, and illegal firearms. I have conducted covert surveillance of suspected CDS traffickers, interviewed individuals involved in gangs and the CDS trafficking trade, participated in Title III wiretap investigations, participated in the execution of state and federal search and arrest warrants involving CDS traffickers and violent offenders, and participated in the seizure of numerous firearms and CDS.

7. Through my training, education, and experience, I have become familiar with the manner in which illegal CDS and firearms are transported, stored, and distributed, and the manner in which CDS traffickers communicate with each other. Based on my knowledge, training, and experience, I know the following:

   a. Cellular telephones are an indispensable tool of the drug trafficking trade. Drug traffickers use cellular telephones, push-to-talk telephones, Short Message Service ("SMS"), electronic-mail, and similar electronic means and/or devices, often under fictitious names or names other than their own, in order to maintain contact with other conspirators. In addition, drug traffickers will often change their cellphones following the arrest of a member of their drug trafficking organization (DTO), or at random times in order to frustrate law enforcement efforts;

   b. Drug traffickers often place nominal control and ownership of telephones in names other that their own to avoid detection of those telephones by government agencies. Even though telephones are in the names of other people, drug traffickers retain actual ownership, control, and use of the telephone, exercising dominion and control over them.

   c. The fruits and instrumentalities of criminal activity are often concealed in digital form. Furthermore, digital camera technology is often used to capture images of tools and

instrumentalities of pending criminal activity. Cell phones have both digital storage capacity and digital camera capabilities.

    d.    Individuals involved in drug trafficking often use digital storage devices to maintain telephone number "contact lists" of individuals who may have assisted in the planning of this and other criminal activity and sometimes take photographs of themselves and/or co-conspirators.

    e.    Individuals who possess or own handguns or other weapons and/or illegal substances frequently photograph themselves holding the handguns or other weapons and/or illegal substances.

    f.    Photographs on a suspect's digital device sometimes show the suspects handling proceeds from drug sales/trafficking or illegal substances.

    g.    Individuals who engage in drug trafficking often use cellular telephones to communicate with co-conspirators via phone calls and text messages.

    h.    Cell phones often record the phone's historical location data.

8.    The information set forth in this affidavit derives from my personal knowledge and observations; discussions with other ATF agents and employees, other law enforcement officers, and witnesses; and my review of police reports and public records. Because I submit this affidavit for the limited purpose of establishing probable cause for a search warrant, I have not included every fact known to me concerning this investigation. Rather, I set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause.

## PROBABLE CAUSE

9.    In late 2018, ATF and the Baltimore Police Department ("BPD") began

investigating a suspected drug trafficking organization (DTO) operating an open-air drug "shop" trafficking cocaine base (crack cocaine) to retail customers in and around the 3700 block of 2nd Street, in Baltimore City, Maryland. Pursuant to this investigation, investigators conducted physical surveillance, obtained and analyzed phone and social media data, and conducted controlled purchases of controlled dangerous substances (CDS) from members of the DTO. To date, investigators have purchased or recovered approximately 149 grams of suspected crack cocaine from KELLY and other members of the DTO. Based on evidence gathered thus far, I believe that Vaness KELLY is the leader of the DTO; Anthony FERGUSON is a close associate of KELLY; and Jamie BARNES and David RILEY are retail sellers of narcotics for the DTO.

10. During the course of this investigation, investigators learned that KELLY directed other members of this organization to sell narcotics in and around 3700 S. Hanover Street in Baltimore. KELLY and other DTO members (both individually and as a group) have been regularly surveilled[1] at or near the drug "shop," at times conducting what appear to be hand-to-hand drug transactions since February 2019. KELLY and others also appeared to share a common suspected stash house, identified as 3731 S. Hanover Street, 2nd floor, Baltimore, Maryland 21225.

11. Throughout the investigation, investigators employed a registered ATF Confidential Informant (hereinafter referred to as "CS-1")[2] and an undercover ATF agent ("UCA") in furtherance of surveillance, controlled purchases, and other investigative techniques. CS-1 and the UCA completed approximately eight CDS transactions with KELLY between May and July

---

[1] This surveillance has included physical surveillance, CCTV surveillance, cellphone tracking and vehicle tracking.

[2] CS-1 has purchased CDS for personal use in the past and therefore knows how narcotics are bought, packaged, sold, and used. CS-1 has provided members of law enforcement with accurate information relative to narcotics in the past, which has been corroborated, to the extent possible, through investigation. CS-1 has also successfully conducted controlled purchases under the direction of members of law enforcement. CS-1 is working for monetary compensation.

of 2019. CS-1 completed purchases from other suspected conspirators (FERGUSON, BARNES, RILEY) on approximately ten dates between March and May of 2016; one of these transactions involved RILEY and KELLY. Every chemical analysis completed to date has positively identified the purchased substances as cocaine base. Contact between the UCA and KELLY and between CS-1 and DTO members established that KELLY and other DTO members are working in concert. Such contact includes but is not limited to:

 a. On March 20, 2019, CS-1 contacted RILEY via telephone to arrange a purchase of CDS. Around the time of this call, RILEY and KELLY were observed near and entering 3720 2nd Street, a suspected stash location. When CS-1 met RILEY near the intersection of 2nd Street and Garrett Avenue, RILEY exited the side yard of 3720 2nd Street, asked CS-1 what type of CDS he/she desired, and then consulted with KELLY before providing CS-1 the requested CDS. After KELLY left the area, RILEY further advised that his "brother" would return soon with additional CDS.

 b. On May 23, 2019, FERGUSON, who had previously sold CDS to CS-1 on six different occasions, directed CS-1 to call his (FERGUSON's) "brother" at telephone number 443-814-2832. CS-1 then called KELLY at 443-814-2832 and arranged to purchase an eighth of an ounce of cocaine base, and the two completed that transaction later the same day.

 c. On June 6, 2019, CS-1 contacted FERGUSON to purchase CDS. FERGUSON advised that he was in class and that CS-1 should contact his (FERGUSON's) "brother". CS-1 then contacted KELLY, who agreed to and ultimately did sell CS-1 approximately one quarter ounce of cocaine base while inside a Nissan Sentra associated with KELLY throughout this investigation.

 d. On June 27, 2019, the UCA contacted KELLY and arranged a purchase of

one ounce of cocaine base. KELLY advised that he needed to pick up the CDS and prepare it; a short time later, the GPS tracker affixed to KELLY's vehicle indicated KELLY traveled to 3200 Auchentoroly Terrace, where an investigator saw the vehicle parked and, about fifteen minutes later, saw KELLY leave the building and re-enter the vehicle. KELLY then met the UCA in person, advising that he had just cooked the CDS, and sold the UCA approximately 28 grams of cocaine base.

12. An analysis of telephone records associated with KELLY, BARNES, FERGUSON, and RILEY (collectively "**TARGET SUBJECTS**") reflects connections amongst the **TARGET SUBJECTS**. These records reveal that from April 2019 to July 2019, there was a high-volume of communications amongst the **TARGET SUBJECTS**. Indeed, each of the **TARGET SUBJECTS** was among the 10 most frequently called individuals by the other **TARGET SUBJECTS**. In many cases, communication between the **TARGET SUBJECTS** involved frequent telephone calls of short duration, frequently under 2 minutes, consistent with habits of drug traffickers. During numerous purchase of CDS by CS-1, **TARGET SUBJECTS** were in frequent contact with one another in moments immediately before and after controlled purchases of CDS.

13. On July 10, 2019 an ATF investigator conducted surveillance of the rear of 3200 Auchentoroly Terrace, 1R. A blue Nissan Sentra identified with KELLY during the investigation was observed parked on the street nearby. At approximately 7:58 am, KELLY was seen exiting the rear door (labeled "1R") of the first floor apartment, then walked to the Nissan Sentra. A law enforcement database revealed that Jessica Frierson is currently using apartment 1R as her listed residence. A query of Frierson's previous residences indicated she previously resided at 4216 Eldone Road, #1, Baltimore MD 21229; the same address used by KELLY in the past.

14. GPS location data obtained throughout this investigation shows KELLY traveling

7

to and from 3200 Auchentoroly Terrace near the times of the pre-arranged CDS transactions with CS-1.

15. Further, on July 31, 2019, KELLY arranged a CDS transaction with the UCA, and in doing so directed the UCA to meet at 3110 Auchentoroly Terrace, located one block from KELLY's residence on Auchentoroly Terrace. Once the UCA arrived in the area, an investigator saw KELLY exit the rear yard of 3200 Auchentoroly Terrace and then enter the UCA's vehicle. After completing a transaction for 56 grams of suspected crack cocaine, KELLY discussed his interest in purchasing certain types of firearms and silencers from the UCA. KELLY then departed the UCA's vehicle and walked back towards the rear yard of 3200 Auchentoroly Terrace.

16. On August 30, 2019, the UCA contacted KELLY at 443-814-2832 and sent him a photograph of a Glock pistol with a suppressor. KELLY advised that he wanted the Glock and attached suppressor if they were functional. KELLY also advised that he had lost his Glock firearm because his cousin was arrested with it recently.

17. On September 17, 2019, the Honorable Beth P. Gesner, U.S. Magistrate Judge of the District Court of Maryland, authorized both arrest warrants for KELLY, BARNES, FERGUSON and RILEY, and search warrants for 3200 Auchentoroly Terrace, 1R, and vehicles seen utilized by KELLY in commission of CDS trafficking.

18. On September 18, 2019, at approximately 12:38 pm, ATF investigators executed an arrest warrant of KELLY and a search warrant of 3200 Auchentoroly Terrace, 1R. Upon entry, KELLY was observed in a hallway, and a female identified as Jessica Frierson was located in the bedroom. After walking to the bathroom and dumping a clear white powdery substance into the sink, KELLY walked towards investigators and was placed under arrest. After being advised of his *Miranda* rights, KELLY advised numerous times "Whatever is in there is mine". KELLY

Case 1:19-mj-03166-JMC   Document 3   Filed 10/29/19   Page 9 of 10

19-3166 JMC

further advised that he slept in the master bedroom where Frierson was initially observed.

19. Located inside the master bedroom and on top of a dresser were the **SUBJECT DEVICES.** Also located on the dresser was a single .557 caliber bullet. Located under the master bedroom bed mattress was a SCCY 9mm handgun, model CPX-1, bearing serial number 10808. The firearm was loaded, with a round in the chamber. Also located under the mattress was a single .40 caliber bullet. Located in the bathroom was a clear plastic bag with a white powdery substance inside. Located inside the master bedroom dresser was CDS packaging and a scale. Located in a backpack were four clear plastic baggies, each containing numerous black and white gel capsules filled with suspected CDS. Each bag was knotted and the gel capsules appeared to be separated in a manner consistent with CDS distribution. A green duffel bag was located containing CDS manufacturing and packing material. A gun holster was located in the living room closet. Two Maryland Department of Corrections Identification cards associated with KELLY were located in the master bedroom area. Located inside the front console area was a single clear bag containing white and black gel capsules with suspected CDS inside.

## CONCLUSION

20. Therefore, based on the evidence provided above, there is probable cause to believe that KELLY is engaged in narcotics trafficking specifically: conspiracy to distribute a controlled dangerous substance, in violation of 21 U.S.C. § 846, and possession with intent to distribute a controlled dangerous substance, in violation of 21 U.S.C. § 841. Furthermore, for the reasons stated above, I believe that evidence of these crimes is likely to be located in the **SUBJECT DEVICES**, including, among other things: communications with drug suppliers and customers, contact information for suppliers and/or purchasers of the narcotics, pictures of narcotics or the proceeds of narcotics sales, pictures of firearms, and location information relating to WILSON and

19 - 3 1 6 6 JMC

his co-conspirators.

21. Furthermore, I submit that the **SUBJECT DEVICES** are and of themselves evidence of federal narcotics offenses, because the fact of the phones being in KELLY's residence, contemporaneous with the presence of drug packaging material, is evidence of its use of the **SUBJECT DEVICES** to facilitate the same offenses.

WHEREFORE, in consideration of the facts presented, I respectfully request that this Court issue search warrants for the **SUBJECT DEVICES,** and authorize the search and the seizure of the items described in Attachment A and seizure of the information described in Attachments B, which constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. §§ 841 and 846.

Respectfully submitted,

_____
Special Agent Douglas Sarsfield
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on October __1__, 2019.

_____
Hon. J. Mark Coulson
United States Magistrate Judge

_____ FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

OCT 2 9 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY